IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DARLA NORWOOD**,                                     Case No. 3:14-CV-00520-SU

             Plaintiff,                            **OPINION AND ORDER**

      v.

**CAROLYN W. COLVIN**,
Commissioner of Social Security,

_____Defendant._____

SULLIVAN, Magistrate Judge:

Darla Norwood ("plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II disability insurance benefits ("DIB") under the Social Security Act ("Act"). All parties have consented to a Magistrate Judge in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case is remanded for the immediate payment of benefits.

Page 1 - OPINION AND ORDER

## PROCEDURAL BACKGROUND

In July 2010[1] plaintiff filed a Title II application for DIB, alleging a disability onset date of September 15, 2004, with a date last insured of December 31, 2007. Tr. 110, 113. After her application was denied initially and upon reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 46–51, 54–61, 73–74. On August 14, 2012, an administrative hearing was held at which plaintiff testified and was represented by counsel; a vocational expert ("VE") also testified. Tr. 32–45. On September 24, 2012, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 18–25. After the Appeals Council denied her request for review, plaintiff filed a complaint in this court. Tr. 15.

## FACTUAL BACKGROUND

Born on September 28, 1957, plaintiff was 46 years old on the alleged onset date of disability and 50 years old on the date last insured. Tr. 46, 110. Plaintiff graduated from high school. Tr. 23, 123. She worked previously as a cashier, office clerk, and bank teller. Tr. 23, 123. Plaintiff alleges disability beginning September 15, 2004, due to osteoarthritis, rheumatoid arthritis, trigger finger, asthma, anxiety/depression, bronchitis, degenerative joint disease, pneumonia, allergic rhinitis, and acute sinusitis. Tr. 46, 54, 122.

/ / /

/ / /

## STANDARD OF REVIEW

---

[1] The ALJ and both denials state plaintiff filed on July 14, 2010, however plaintiff's application itself reflects that plaintiff filed on July 16, 2010. Tr. 18, 46, 54.

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First, the Commissioner considers whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have such an impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either

singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can perform her past work, she is not disabled; if a claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(g), 416.920(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 20. At step two, the ALJ determined that plaintiff had the following severe impairments: osteoarthritis of the bilateral knees, left hand, and bilateral shoulders; trigger finger on the left; and asthma. *Id*. At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 20–21.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work, as defined by 20 C.F.R.

§ 404.1567(b), except:

> (1) the claimant is limited to occasional reaching above shoulder height; (2) the claimant is limited to sitting for 6 hours total in an 8 hour working day, and standing for 2 hours at a time and up to 4 hours total in an 8-hour working day; (3) the claimant is limited to walking for up to 4 hours total in an 8-hour working day; (4) the claimant is limited to lifting and carrying 10 pounds frequently and 20 pounds occasionally; and (5) the claimant is limited to occasional fine manipulation and forceful grip with the non-dominant upper extremity.

Tr. 21.

At step four, the ALJ found that plaintiff could not perform her past relevant work. Tr. 23. At step five, the ALJ determined that plaintiff could perform a significant number of jobs existing in the national and local economy despite her impairments, such as cashier, bottling line attendant, and packing line worker. Tr. 24. Accordingly, the ALJ concluded that plaintiff was not disabled under the Act. Tr. 24–25.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) finding plaintiff not fully credible; (2) rejecting the lay opinion of plaintiff's husband, Richard Norwood; and (3) improperly relying on the vocational expert testimony.

### I.    Plaintiff's Credibility

Plaintiff first contends that the ALJ failed at step four to articulate a clear and convincing reason, supported by substantial evidence, for rejecting her subjective symptom statements concerning the extent and severity of her impairments. Defendant responds that the ALJ reasonably found plaintiff's testimony not entirely credible. The Court first notes that the ALJ's decision does

not explicitly state a finding that plaintiff's testimony on the intensity, persistence, or functionally limiting effects of her pain or symptoms lacks credibility. Tr. 22. The Court, however, infers such a finding based on the disparity between plaintiff's testimony and the RFC assessment.

In her application, plaintiff stated that it was difficult to sit for 20 minutes and, when she does, she has a hard time standing up. Tr. 129. Plaintiff also stated that her hips give her "a hard time" if she walks more than a block. *Id*. In addition, she stated that her hands and fingers hurt constantly, "feel like somebody is stabbing them with a[n] ice pick[,]" and are often swollen. *Id*. She stated that her shoulders hurt, and her range of movement is limited. *Id*. Because of her hand and shoulder problems, she wrote she has difficulty lifting, gripping, holding, and twisting. *Id*. She wrote further that her asthma acts up when she makes her bed and lifts her nine-month old granddaughter. *Id*.

At the hearing, plaintiff testified that she was unable to work at her previous file clerk job due to problems with her hands and an inability to sit or stand for long. Tr. 34. Plaintiff explained that one of her duties as a file clerk was fingerprinting, but she could not fulfill this duty because she was unable to turn her wrists or grip. Tr. 35–36. Plaintiff also testified that she had difficulty working at a computer because her "fingers would go to sleep and [her] shoulders would hurt . . . ." Tr. 36. If she stood "for very long," plaintiff testified her feet and hips would hurt. *Id*. Plaintiff stated that she had difficulty independently performing basic activities of daily life such as brushing her teeth or preparing a meal. Tr. 38.

The ALJ found that plaintiff's "medically determinable impairments caused symptoms resulting in some limitations on work activity . . . [but] the objective evidence does not establish that her impairments preclude her from engaging in all basic work activity as she has alleged." Tr. 22.

The ALJ found plaintiff able to perform light work with certain limitations. According to the regulations, light work

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). As noted, the ALJ specified the following additional limitations for an eight hour workday: occasional reaching above shoulder height, six hours of sitting total, two hours of standing at a time and up to four hours of standing total, four hours of walking total, and "occasional fine manipulation and forceful grip with the non-dominant upper extremity." Tr. 21.

The ALJ's findings departed from plaintiff's testimony regarding her limitations. For instance, plaintiff stated she could sit for no longer than 20 minutes, but the RFC assessment allows for six hours of sitting in an eight hour work day. Tr. 21, 129. Plaintiff also stated she could walk no more than one block, yet the RFC permits up to four hours of walking. *Id*. Although the ALJ did not explicitly state that he found plaintiff lacked credibility, he implicitly made that finding by assessing an RFC that differed significantly from plaintiff's pain, symptom, and limitation testimony.    Plaintiff contends the ALJ failed to specifically and adequately articulate his reasons for discrediting plaintiff's testimony. Defendant, in turn, argues the ALJ "gave legally sufficient reasons for the adverse credibility determination[,]" namely, that plaintiff's testimony was inconsistent with the objective medical evidence and her activities of daily living. Def.'s Br. at 8.

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). Once

a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir.1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284.

The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id*. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Here, the ALJ erred by failing to articulate a clear and convincing reason, supported by substantial evidence, for rejecting plaintiff's subjective pain and symptom testimony concerning the extent and severity of her impairments. First, apart from a single reference to plaintiff's testimony regarding basic activities of daily living, discussed below, the ALJ did not identify which of

plaintiff's statements he found to be not credible. Tr. 22–23. At the August 14, 2012, hearing, plaintiff testified that she was unable to sit or stand "for very long" without pain, and unable to grip things with her fingers or turn with her wrists. Tr. 32, 34–36, 45. She also testified that she could not work at a computer due to pain in her shoulders and numbness in her fingers. Tr. 36. Plaintiff's hearing testimony did not specify exact time limitations and was thus somewhat vague, however, her written application included more specific limitations, such as difficulty sitting for 20 minutes and difficulty walking for more than a block. Tr. 129. The ALJ's decision did not specifically address any of plaintiff's statements regarding the limitations of her impairments. Tr. 18–25. The only reference the ALJ made to plaintiff's limitation testimony was, "The claimant alleges that she is unable to work due to joint and musculoskeletal pain[,]" before concluding "the objective evidence does not establish that her impairments preclude her from engaging in all basic work activity as she has alleged." Tr. 22. This is not sufficient for review. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (citing *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2008)).

Additionally, the reasons the ALJ offered for discrediting plaintiff's general testimony were not supported by substantial evidence. The ALJ did not find plaintiff to be malingering and offered two reasons for rejecting plaintiff's limitation testimony: (1) the objective medical evidence supports the ALJ's RFC findings and (2) plaintiff's basic activities of daily living reflect a higher level of functioning than she alleged.

A.    Objective Medical Evidence

The ALJ first discussed objective medical evidence during the relevant time period for each of plaintiff's impairments that the ALJ found at step two to be severe. Tr. 22. Regarding plaintiff's

osteoarthritis, the ALJ noted that x-rays of plaintiff's knees revealed "very minimal degenerative arthritis spur formation along the margins of the medial femorotibial joint spaces of both knees." *Id.* (internal quotation marks omitted). The ALJ also stated that "[x]-rays of the bilateral shoulders and left hand revealed very minimal degenerative arthritis spur formation at the left thumb interphalangeal joints, and tiny metallic foreign body in the soft tissues adjacent to the left thumb metacarpal bone," but that the exam was otherwise "essentially negative . . . ." *Id.* (internal quotation marks omitted). The ALJ continued, stating "[a] physical examination taken in April of 2007 revealed restricted shoulder movements with painful rotations and lateral straight arm abduction[;] . . . minimal effusion in the bilateral knees[; and]. . . mild tenderness, crepitation, and range of motion of the left first palm joint." *Id.* The ALJ concluded, "The objective medical evidence in the record in regards to the claimant's osteoarthritis and musculoskeletal impairments from the alleged onset date until the date last insured supports a finding that the claimant was limited to the residual functional capacity outlined above." *Id.*

First, the ALJ did not make a specific finding that the objective medical evidence contradicted plaintiff's testimony, nor does the objective medical evidence directly contradict plaintiff's symptom testimony. *See Smolen*, 80 F.3d at 1284–85 ("[A]lthough Smolen's sparse medical records during the relevant period do not contain prior consistent statements to corroborate Smolen's claims of pain and fatigue, nothing in them appears to contradict Smolen's statements, and the ALJ made no finding identifying a contradiction."). "The amount of pain caused by a given physical impairment can vary greatly from individual to individual." *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). Additionally, plaintiff's April 2007 physical examination actually *supports* plaintiff's testimony that she experiences pain in her shoulders and a limited range of motion. Tr. 22,

36. This evaluation may be the basis for the limitation to "occasional reaching above shoulder height," but without any analysis of the RFC assessment in the ALJ's decision, the Court cannot speculate as to the grounds for the ALJ's conclusion. *Treichler*, 775 F.3d at 1103 (citing *Bunnell*, 947 F.2d at 346).

 The ALJ performed a similarly cursory analysis of the objective medical evidence of plaintiff's asthma, which states, in its entirety:

> The record indicates that the claimant also has asthma, with shortness of breath and wheezing. In May of 2006 the claimant had a flare up of allergic rhinitis with associated mild asthma exacerbation, and her dosage of pulmonary inhalant was adjusted. Treatment notes from May of 2011 indicate that the claimant reported that she has impaired sleep and snores, but is not on CPAP. The objective medical record in regards to the claimant's asthma from the alleged onset date until the date last insured supports a finding that the claimant was limited to the residual functional capacity outlined above.

Tr. 22 (citations omitted). Regarding plaintiff's asthma, the ALJ again did not indicate whether or how the objective medical evidence affected his assessment of plaintiff's RFC or credibility.

 Again, an ALJ may not make a negative credibility finding solely because plaintiff's testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. The objective medical evidence here is thus not a valid reason for rejecting plaintiff's testimony.

 Plaintiff also argues that the ALJ impermissibly ignored relevant objective medical evidence in assessing plaintiff's RFC and credibility, including objective medical evidence of major depression, inflammatory polyarthritis, and functional limitations in both hands rather than solely her non-dominant hand. Plaintiff further contends the ALJ improperly failed to consider medical evidence from *after* the date last insured that nonetheless "provided explanation and support for how

plaintiff's testimony was consistent with the objective medical evidence." Pl.'s Br. 12.

When assessing a plaintiff's RFC, all of the claimant's impairments, both severe and nonsevere, must be considered. 20 C.F.R. §§ 404.1545(a)(1)–(2), 416.945(a)(1)–(2). However, the ALJ is only required to consider the limitations imposed by those impairments. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Social Security Ruling ("SSR") 96–8p (1996)). When a plaintiff fails to establish that an impairment results in any functional limitation, the ALJ need not consider that impairment in his RFC assessment[2]. *See Sherman v. Colvin*, 582 Fed. App'x 745, 749 (9th Cir. 2014) (citing *Burch*, 400 F.3d at 684)[3].

The ALJ erred by failing to sufficiently credit considerable objective medical evidence in the record. On February 6, 2008, plaintiff saw Dr. Peter K. Van Patten, M.D. Tr. 205. Plaintiff complained of "pain at the base of her left thumb, sometimes this occurs without activity, other times it occurs with activity, it is like a sharp stabbing pain." *Id*. Plaintiff also complained of "pain in the right index finder at the MCP joint and the PIP joint." *Id*. Dr. Van Patten diagnosed "Left first CMC

---

[2] The ALJ did not err by not considering plaintiff's depression in assessing her RFC and credibility. Plaintiff points to treatment notes made by Dr. Beata Anasz-Kopecka, M.D., on April 25, 2007 that state plaintiff has "[m]ajor depression." Tr. 224. The note continues, however, that "[t]he patient is doing well on Zoloft 50 mg q.d. Continue the same." *Id.* At the hearing, plaintiff testified that her depression affected her ability to work because she "didn't want to get up in the mornings and it took me two to three hours to get ready and to be able to even, you know, move and get myself going." Tr. 39. In evaluating whether plaintiff had a medically severe impairment or combination of impairments at step two, the ALJ stated, "There is no evidence to suggest that depression causes the claimant anything more than minimal limitations, or that it would affect her ability to function in a work setting." Tr. 20. Based on the April 2007 treatment notes, the ALJ's conclusion that plaintiff's depression caused only minimal limitations is supported by substantial evidence. As a result, the ALJ did not err by not considering plaintiff's depression because it did not cause functional limitations.

[3] The Court may cite to unpublished Ninth Circuit opinions issued on or after January 1, 2007. *See* U.S. Ct. App. 9th Cir. Rule 36-3(b) and Fed R. App. P. 32.1(a).

joint DJD. . . . Diffuse mild osteoarthritis of the hands bilaterally" supported by x-rays. Tr. 206. In addition, plaintiff told Dr. Van Patten that "[t]he swelling makes [it] difficult for her to grip things[,]" "[s]he has numbness in the morning when she wakes up[,]" "[s]he is dropping things out of her hand[,]" and "[s]he has heard crackling when she bends her fingers, it is difficult for her to twist the lids open." *Id*. Plaintiff specifically noted "[t]his occurs on both sides." Tr. 205. While the ALJ referred to this medical record, he did not take into account plaintiff's subjective complaints as reported by Dr. Van Patten. Tr. 22.

Treatment notes from Dr. Anna Marie Macasa, M.D., made in February 25, 2008, state plaintiff has a "[n]ew onset inflammatory polyarthritis of the small joints [which] seems to have a pattern of rheumatoid arthritis." Tr. 186. At that time, Plaintiff complained she "started experiencing pain on the left thumb with a subacute onset and gradual worsening eight months ago[, which] bothers her more with activity." Tr. 185. Plaintiff also complained that "[a]bout three months ago she started hurting in the knuckles of her hands," that she "notice[s] them to be swollen and puffy in the morning," and that she experiences "morning stiffness that lasts for at least three hours." *Id*. She also reported that "she hurts in both shoulder joints and she cannot move them at all[,]" though "she does not hurt at all in the ankles or small joints of the toes." *Id*. Plaintiff continued seeing Dr. Macasa every few months for over a year. Tr. 173–84 (March 17, 2008; April 28, 2008; July 28, 2008; September 16, 2008; January 8, 2009; March 9, 2009).

The record also reflects that in 2008 and 2009 plaintiff regularly saw Dr. Alan Seif, D.O., and Dr. Ajay Wanchu, M.D., at the Oregon Health & Science University Rheumatology Department. Tr. 231–37. Plaintiff was diagnosed with "widespread joint pain" and "more than 11/18 tender point of the upper and lower quadrants . . . ." Tr. 233. During that same time period, plaintiff also

regularly saw Dr. Steve McNally, M.D. who assessed her for asthma, rheumatoid arthritis, and "trigger finger" on her middle right finger. Tr. 264–83.

Apart from the limited reference to plaintiff's "physical exam taken in April of 2007", plaintiff's depression in a February 25, 2008, examination, and the limited reference to Dr. Van Patten's record, the ALJ did not mention these visits or doctors' examinations in his decision. Tr. 20. As noted, "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). Discrediting a medical evaluation because it was made after the date last insured is error. *Rusten v. Comm'r of Soc. Sec. Admin.*, 468 Fed. App'x 717, 720 (9th Cir. 2012) (citing *id.*). Here, the ALJ did not indicate whether he credited the opinions of plaintiff's doctors, or whether he considered them at all, in finding that plaintiff's testimony was not consistent with the objective medical evidence. This was error.

B.    Basic Activities of Daily Life

The second reason for rejecting plaintiff's testimony was also not supported by substantial evidence. The ALJ found plaintiff's general testimony not credible because, during the time she testified she had difficulty independently performing basic activities of daily life such as brushing her teeth and cooking, plaintiff also testified that her husband had two strokes and two triple bypass surgeries, "which suggests that the claimant was required to take care of more of her own daily tasks than she and Mr. Norwood suggest." Tr. 22–23. Activities of daily living may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012).

Plaintiff's entire testimony on her husband's health problems resulted from the ALJ's inquiry

about why plaintiff had not followed through on a prior application for disability benefits. She stated: "we spent quite a bit of time in the hospital in 2009 and then he had a couple of strokes and he's been in and out of the hospital. He had – he's had two triple bypass[] surgeries and it just – I've kind of put myself on hold . . . ." Tr. 37. The daily activities plaintiff wrote she had difficulty independently performing included pulling her pants up, making a bed, and lifting her granddaughter. Tr. 129. She also testified she cannot twist caps off. *Id*. At the hearing, plaintiff stated she had difficulty brushing her teeth and preparing a meal. Tr. 38.

As defendant points out, plaintiff's husband's strokes and heart surgeries occurred in 2009, after the date last insured. Tr. 37; Def.'s Br. 8–9. Defendant argues any error is harmless because plaintiff claims continuing disability. Evidence from after the period of disability may be relevant. *See Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014) (lay testimony from after time period relevant); *Smith*, 849 F.2d at 1225 (medical evaluations made after time period relevant). In any event, the ALJ's "suggestion" plaintiff could perform more tasks than she stated because of Mr. Norwood's health problems is not supported by substantial evidence in the record.

There is simply no evidence plaintiff independently undertook any basic activities of daily life while her husband was in the hospital. The activities plaintiff described she could or could not do are wholly consistent with a finding of disability; one need not be "utterly incapacitated" to be disabled. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing *Fair*, 885 F.2d at 603). The Ninth Circuit has held that "'[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility.'" *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (alterations in original) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). Plaintiff's ability or inability to independently pull up her pants,

make a bed, lift her granddaughter, twist off a cap, brush her teeth, or prepare a simple meal, would not detract from her credibility regarding her bilateral hand pain or sitting, standing, and walking limitations. *Vertigan*, 260 F.3d at 1050. Finally, these activities are not clearly transferable to a work environment, and the ALJ did not make such a finding. *Molina*, 674 F.3d at 1112–13; *see also Fair*, 885 F.2d at 603.

The ALJ's conclusion must be upheld where "evidence is susceptible to more than one rational interpretation." *Burch*, 400 F.3d at 679. Here the record is insufficient to support a finding that plaintiff "was required to take care of more of her own daily tasks than she . . . suggest[s]" and that plaintiff's subjective pain testimony thus lacks credibility. In sum, the ALJ's assessment in the RFC and his findings on plaintiff's credibility are error.

II.    <u>Lay Witness Testimony</u>

Plaintiff next asserts that the ALJ improperly rejected the lay opinion of Mr. Norwood, plaintiff's husband. Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina*, 674 F.3d at 1114 (citation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. *Id.* (citation and internal quotation omitted). "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Dodrill*, 12 F.3d at 918–19 (citing *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). In fact, "[d]isregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Id.* (citing *Sprague*, 812 F.2d at 1232; 20 C.F.R. § 404.1513(e)(2)).

Mr. Norwood provided two written statements in support of plaintiff's DIB application. On

July 17, 2012, Mr. Norwood completed a Third-Party Adult Function Report in which he testified that plaintiff was in constant pain and had difficulty performing activities of daily living. Tr. 160–65. Specifically, Mr. Norwood wrote that plaintiff was constantly in pain and "spent a large amount of her day sitting from place to place not being able to get comfortable without a lot of pain." Tr. 160. The pain interrupted her sleep and she had difficulty walking for even a few minutes. Tr. 161, 163. Mr. Norwood also wrote that plaintiff was mostly unable to tend to her personal care. Tr. 161. He wrote she had difficulty putting clothes on, taking clothes off, and using the toilet. *Id*. Mr. Norwood stated that he washed and brushed plaintiff's hair and helped her shave her legs, and that plaintiff could not brush her teeth. *Id*. Mr. Norwood testified further that plaintiff was mostly unable to help with housework besides "some lite cooking" and "help[ing] sort cloth[e]s . . . ." Tr. 162. Mr. Norwood wrote that plaintiff was able to feed herself and fix some simple meals such as sandwiches, yogurt, fruit, or bag salad. *Id*. Mr. Norwood stated plaintiff decided not to drive anymore because "she couldn't handle the car turning and brak[ing,]" but noted that plaintiff sometimes accompanied him when he went shopping "to get things that she [preferred]." Tr. 163. In addition, Mr. Norwood stated their "kids complained because the[y] had to stay home a lot to do chores [plaintiff] was no longer able to do." Tr. 165. In general, Mr. Norwood represented that when plaintiff was able to contribute to her personal care and the household chores, it was a very slow process. Tr. 160–65.

In a letter dated July 18, 2012, Mr. Norwood mostly reiterated his testimony in the Third-Party Adult Function Report. Tr. 166. He wrote that "before she became disabled and was unable to work she always gave 110% of herself in whatever she was doing." *Id*. He also wrote that plaintiff "was also unable to take care of much of the daily tasks [like] chores around the house, making meals, washing clothes, dishes, vacuuming, and tending to the kids." *Id*. He continued:

"Things like brushing her teeth, shampooing her hair, [peeling] potatoes, [and] grating cheese are impossible for her to do." *Id*.

The ALJ briefly summarized Mr. Norwood's testimony but apparently did not find it entirely credible. Tr. 23. He wrote: "The undersigned has reviewed this report, however, the undersigned finds that Mr. Norwood's close relationship with the claimant, and a desire to help her, likely influenced his opinion regarding the claimant's abilities." *Id*. As noted, he also discredited Mr. Norwood's testimony regarding basic activities of daily living because Mr. Norwood's own health problems "suggests that the claimant was required to take care of more of her own daily tasks than she and Mr. Norwood suggest." *Id*.

At the time Mr. Norwood completed the report, he stated he had known plaintiff for 26 years. Tr. 160. He stated "we spent most of all day and night together." *Id*. Thus, Mr. Norwood was competent to testify because he was in a position to observe plaintiff's symptoms and daily activities. As a result, the ALJ may not disregard Mr. Norwood's testimony simply because of his close relationship with plaintiff. Mr. Norwood's close relationship with plaintiff was not a valid reason to give his testimony little weight.

The ALJ also found that Mr. Norwood's time in the hospital "suggests that the claimant was required to take care of more of her own daily tasks than she and Mr. Norwood suggest." Tr. 22–23. As discussed above, plaintiff testified that she "spent quite a bit of time in the hospital in 2009 and then [Mr. Norwood] had a couple of strokes and he's been in and out of the hospital." Tr. 37. However, the Court reiterates that there is no indication anywhere in the record that plaintiff independently undertook any basic activities of daily life while her husband was in the hospital. The Court also reiterates even if plaintiff independently undertook these activities, it would not support

a finding of not disabled. Thus, Mr. Norwood's own health problems were also not a valid reason

to give little weight to his testimony regarding plaintiff's limitations. Therefore the ALJ erred by

failing to provide specific, germane reasons supported by substantial evidence in the record for

rejecting Mr. Norwood's lay testimony.[4]

III.    <u>Vocational Expert Testimony</u>

Plaintiff next argues the ALJ erred at step five of the sequential evaluation in the following

ways: (1) the hypothetical the ALJ posed to the VE did not include all of plaintiff's limitations;

(2) the ALJ improperly ignored certain VE testimony; (3) the ALJ improperly found plaintiff able

to perform light work; (4) the ALJ improperly relied on VE testimony that conflicted with the

Dictionary of Occupational Titles ("DOT"); and (5) the ALJ misapplied the medical vocational

guidelines. Defendant argues the ALJ properly assessed plaintiff's RFC and properly relied on VE

testimony.

Plaintiff's first four arguments involve the ALJ's assessment of plaintiff's RFC. When an

ALJ improperly excludes pain and symptom testimony from an RFC assessment, the assessment is

not supported by substantial evidence. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)

(citing *Robbins*, 466 F.3d at 883). Furthermore, when the hypothetical posed to the VE relies on the

erroneous RFC assessment, the ALJ's step-five determination, based on the VE's testimony, is also

not supported by substantial evidence. *Id.* at 1041 (citing *Gallant v. Heckler*, 753 F.2d 1450, 1456

(9th Cir. 1984)). As discussed in detail above, in assessing plaintiff's RFC the ALJ improperly

rejected both plaintiff's own testimony as well as Mr. Norwood's lay witness testimony regarding

---

[4]The parties disagree on how to interpret the testimony regarding how much plaintiff's children assist her. Pl.'s Br. 14; Def.'s Br. 10–11. It is irrelevant, however, because the ALJ's reasons for rejecting both plaintiff's and Mr. Norwood's testimony, without considering whether the children help, are not supported by substantial evidence in the record.

plaintiff's limitations. *Supra* Parts I & II. As a result, neither the RFC assessment nor the ALJ's step-five determination is supported by substantial evidence.

Plaintiff also argues the ALJ misapplied the Medical-Vocational Guidelines because he used Medical Vocational Rule 202.21, which only applies to individuals between the ages of 18 and 49, rather than Rule 202.14, which applies to plaintiff, who was 50 years old at the date last insured. Defendant argues the ALJ relied not on the medical vocational guidelines but rather on the testimony of the VE and, in any event, the result is the same under Rule 202.14 such that any error in applying Rule 202.21 is harmless. Defendant is correct. *See Tackette v. Apfel*, 180 F.3d 1094, 1100–01 (9th Cir. 1999) (citing *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 577–78 (Pregerson, J., concurring) (9th Cir. 1988)). The ALJ did not misapply the Medical-Vocational Guidelines because he did not apply them at all and only relied on testimony of the VE. Tr. 24.

Because the ALJ erred in analyzing plaintiff and her husband's testimony, the subsequent RFC assessment and hypothetical questions to the VE at step five are not based upon proper legal standards and must be reversed.

IV.    Remand

Plaintiff requests that the court reverse and remand for immediate payment of benefits because "[r]emand for another hearing would unnecessarily delay much needed benefits," remand "would provide no incentive to the ALJ to fulfill his obligation to develop the record[,]" and "the evidence is sufficient to demonstrate Plaintiff's eligibility without the need for further evaluation." Pl.'s Br. 18.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).

The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138–39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively, and must conduct a credit-as-true analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.*; *see also Garrison*, 759 F.3d at 1020. "A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss*, 635 F.3d at 1138 (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 357 (7th Cir. 2005)).

The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348). The doctrine's flexibility "is properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates *serious doubt* that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021 (emphasis added).       As noted, the Court finds the ALJ failed to provide legally sufficient reasons for rejecting relevant, competent evidence regarding plaintiff's

limitations, and thus the first element of the credit-as-true test is met. In addition, there are no outstanding issues to be resolved and the record establishes that the ALJ would be required to find plaintiff disabled when plaintiff's pain testimony is credited as true. Plaintiff testified to swelling, severe pain, and an inability to grip in both of her hands. Tr. 34, 129. Although the ALJ did not find a severe impairment in plaintiff's non-dominant hand, in assessing her RFC the ALJ must consider limitations caused by all impairments, including nonsevere ones. *Carmickle*, 533 F.3d at 1164. Plaintiff's testimony regarding bilateral hand pain is supported by objective medical evidence referenced by the ALJ. Tr. 22 ("Treatment notes indicate that the claimant was assessed as having diffuse mild osteoarthritis of the hands bilaterally . . . ."). Plaintiff also testified to significant sitting, standing, walking, and lifting restrictions. Tr. 34–38, 129. These limitations are also supported by the objective medical evidence that forms the basis of the ALJ's finding that osteoarthritis of the bilateral knees and shoulders constitutes a severe impairment. Tr. 20, 34–38, 129. Thus, crediting plaintiff's testimony as true, plaintiff has bilateral hand, sitting, standing, walking, and lifting limitations.

The ALJ's hypothetical to the VE did not account for such limitations, however on cross examination plaintiff's attorney added the bilateral hand limitation: "could one do the jobs you identified . . . if handling and fingering bilaterally were at the occasional level?" Tr. 43–44. The vocational expert replied "That would limit – or that would preclude work that I can offer within this hypothetical." Tr. 44. Even without considering the additional sitting, standing, walking, and lifting limitations, there are no outstanding issues to be resolved. *Treichler*, 775 F.3d at 1108.

The record here is far from perfect. Much of the medical evidence is dated after the date last insured. Tr. 173–283. In addition, the Disability Determination Services concluded there was

insufficient evidence to evaluate the claim during the relevant period. Tr. 50, 59. The record is, however, fully developed, and the Court's evaluation of it as a whole does not create serious doubt that plaintiff is disabled. Crediting plaintiff's limitation testimony as true, it is clear that the ALJ would be required to find plaintiff is unable to perform work existing in significant numbers in the national or local economy and is, therefore, disabled. As a result, remand for immediate payment of benefits is appropriate.


**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is REVERSED and this case is REMANDED for immediate payment of benefits.

IT IS SO ORDERED.

Dated this 15th day of April, 2015.


    /s/ Patricia Sullivan
    Patricia Sullivan
    United States Magistrate Judge